# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 29 2014

MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Sheriff Thomas Rodella<br>(Person and any effects on person) | )<br>)<br>)  Case No.  14mr407<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of ___**New Mexico**___ *(identify the person or describe property to be searched and give its location)*:

Sheriff Thomas Rodella (search of his person and any effects on his person)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See items listed on attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __242__, and the application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John W. Howard, Special Agent/ FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 29, 2014

City and state: Albuquerque, NM

*Judge's signature*

KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

**SEALED**

DISTRICT OF NEW MEXICO

ALBUQUERQUE, NEW MEXICO

**AFFIDAVIT**

**1.** I, John W. Howard, Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, Washington, D.C., having been duly sworn, state:

**2.** I am a Special Agent of the FBI, and am currently assigned to the Albuquerque Division, and have investigative responsibilities including white collar crime and public corruption. The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other employees of the FBI, other law enforcement agencies, and from records and documents that I, and others, have reviewed. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to demonstrate probable cause for the issuance of the requested search warrant.

**INTRODUCTION**

**3.** This affidavit is in support of an application by the United States of America for search warrants for Sheriff Thomas Rodella's residence located at 16 Private Drive 1156, Espanola, New Mexico 87532[1] to include his vehicle which, is a Jeep Wrangler bearing New Mexico license plate number LGR088, VIN number 1J4GA39128L569817, Sheriff Rodella's person, and any Rio Arriba Sheriff's Office vehicles, marked or unmarked, on or adjacent to Sheriff Rodella's residence, for the items listed in Attachment B of this Affidavit, for which there is probable cause to believe are present at the locations listed and were used to commit a crime and which constitute evidence of violations of federal law, namely, 18 USC § 242, Deprivation of rights under color of law by Rio Arriba County Sheriff Thomas R. Rodella (Sheriff Rodella) and others.

---

[1] A Google map photo of the residential search location is included as Attachment A.

4. Sheriff Rodella is currently the Sheriff of Rio Arriba County in New Mexico. He was elected to the position in 2010 and took office in 2011.

## BACKGROUND

6. On Tuesday, March 11, 2014 at or around 1730, Michael J. Tafoya (Tafoya), XXX-XX-8889, was arrested in or around 100 Country Road (CR) 126 B East in Espanola/Santa Clara, New Mexico. Tafoya was charged with Resisting, Evading or Obstructing an Officer (fleeing, evading or attempting to evade), Aggravated Assault upon a peace officer, Aggravated Assault (use of a deadly weapon), and Reckless Driving.

7. A Criminal Complaint was written and attested to by Rio Arriba County Sheriff Deputy Andy Gutierrez (Deputy Gutierrez), Deputy RA14.

8. I have reviewed the Criminal Complaint written by Deputy Gutierrez.

9. I have conducted interviews regarding the matter.

10. I have reviewed the State of New Mexico Uniform Traffic Citation issued by Deputy Gutierrez referencing the case as SO-14-000310.

11. I have reviewed the State of New Mexico Uniform Incident Report written by Deputy Gutierrez on March 11, 2014 and approved by Rio Arriba Sheriff's Office Lieutenant Randy Sanches (Lieutenant Sanches) on May 11, 2014.

12. I have reviewed an undated Supplemental Report for Case No. SO-14-000310 that appears to be signed by Sheriff Rodella and Undersheriff Vince Crespin (Undersheriff Crespin). The report appears to be Sheriff Rodella's statement.

13. I have reviewed an undated Supplemental Report for Case No. SO-14-000310 that appears to be signed by Thomas Rodella Jr. (Rodella Jr.). The report appears to be Rodella Jr.'s statement. Rodella Jr. was not a sworn law enforcement officer at the time of the incident.

**14.** I have reviewed a Supplemental Report for Case No. SO-14-000310 dated March 12, 2014 signed by Undersheriff Crespin. The report appears to be signed by the Approving Deputy, identified as RA-3, and the signature is dated March 26, 2014. The signature is illegible.

**15.** On or about May 2, 2014, Tafoya contacted the FBI to report allegations of an unjustified traffic stop and the use of excessive force by Sheriff Rodella incident to Tafoya's arrest on March 11, 2014.

**16.** On or about May 16, 2014 I interviewed Tafoya.

**17.** On or about May 21, 2014, I interviewed Tafoya a second time.

**18.** Tafoya reported that he was traveling on CR 23 late in the afternoon, enroute to have dinner at a friend's house. As he approached CR 399, he stopped at a stop sign. Looking both ways, Tafoya observed a forest green Jeep driving south on CR 399. Tafoya could see that he had enough room to make his left turn onto CR 399 in front of the jeep. Tafoya proceeded south on CR 399 in front of the jeep.

**19.** The Jeep then sped up and began tailgating Tafoya's vehicle. Tafoya was driving at the posted speed limit of 35 mph. Tafoya then performed a "brake check" whereby he pressed his brakes briefly slowing down in order to alert the Jeep he was not happy about being tailgated.

**20.** The Jeep continued tailgating Tafoya. He could see two occupants in the Jeep through his rear view mirror.

**21.** Tafoya continued driving south on CR 399 until he came to an area with a pull-out on a wide shoulder. Tafoya slowed and pulled onto the pull-out in order to allow the Jeep to pass. As the Jeep passed Tafoya, he raised his hands in the air as if to say "what's your problem" to the occupants of the Jeep.

**22.** The Jeep passed Tafoya by approximately 50 to 100 feet or so and then abruptly stopped in the road further south on CR 399. The Jeep then quickly reversed north on CR 399 and pulled onto the shoulder immediately in front of Tafoya's vehicle.

**23.** Both occupants of the Jeep exited the vehicle and motioned to Tafoya to come towards them in a threatening manner. Tafoya observed one of the individuals wearing a baseball cap, later identified as Sheriff Rodella, mouth "come on." According to Tafoya, the individuals were not in uniform, did not show any identification or badges, and did not identify themselves as law enforcement. Tafoya believed they were challenging him to get out of the vehicle to fight. Tafoya became frightened and got back on CR 399, and drove around the two individuals and their Jeep.[2]

**24.** Tafoya is 5 feet 6 inches tall and weighs 140 lbs.

**25.** Rodella Jr. is 5 feet 7 inches tall and 165 lbs. Sheriff Rodella is 5 feet 9 inches tall and weighs 200 lbs.

**26.** Tafoya continued south on CR 399, but at a faster rate of speed to escape the Jeep. However, Tafoya noticed the jeep had already caught up to him.

**27.** Tafoya passed the turnoff to the friend's house at which he was to have dinner so that he would bring no trouble to his friend.

**28.** Tafoya became very frightened and turned down a side road in order to lose the Jeep.

**29.** Tafoya then turned down a private driveway, 100 C off of CR 126 B East, thinking the Jeep occupants would think he lived there and not give chase.

**30.** The Jeep continued pursuing Tafoya down the private drive of 100C off CR 126 B East.

**31.** Tafoya then noticed a jogger on the side of the road and he slowed down, rolled down the passenger window and yelled "call the police, someone's after me." Tafoya then sped up and continued down the drive.

**32.** When Tafoya got a little farther down the drive, he noticed it was a dead end/ turnaround. A large pipe was protruding from the ground in the middle of the dead end/turnaround. Tafoya attempted to turn his vehicle around, but could not complete the turn.

---

[2] Tafoya identified both Sheriff Rodella and Rodella Jr. from photographs shown during his second interview.

**33.** After realizing he was not going to be able to turn his vehicle around and seeing Sheriff Rodella jump out of the passenger side of the Jeep with a silver gun in his hand and sprint towards his vehicle, Tafoya put his car in reverse and tried to back up to face his vehicle towards the exit in order to get away.

**34.** When interviewed, Tafoya described the silver gun as the type with a wheel. I believe the handgun to be a revolver. Based on information obtained during the investigation, Sheriff Rodella carries a revolver.

**35.** Tafoya's vehicle then struck the large metal pipe protruding from the ground in the center of the turnaround.

**36.** After Tafoya hit the pipe and before he could place the vehicle in drive, Sheriff Rodella entered Tafoya's car through the front passenger door.

**37.** Sheriff Rodella pointed the gun at Tafoya's head.

**38.** Tafoya began begging for his life repeatedly saying, "Please don't kill me." At the same time Tafoya grabbed both of Sheriff Rodella's hands in order to keep the pistol from being pointed at his head. However, Sheriff Rodella kept bending his wrist so the silver handgun was still pointed at Tafoya's head. As Tafoya pleaded for his life, Sheriff Rodella repeatedly responded "It's too late."

**39.** Seconds after the struggle began, Tafoya's driver side door opened and he was pulled from the vehicle by the Jeep's other occupant later identified as Sheriff Rodella's son, Thomas Rodella Jr.

**40.** Rodella Jr. pulled Tafoya from the vehicle and pinned him to the ground, pulling his arms behind his back.

**41.** While on the ground, Tafoya again began pleading for his life thinking he was about to be shot.

**42.** Rodella Jr. then stated "Don't you realize he's the Sheriff?" That was the first time since the pursuit began that Tafoya had any indication that any of the occupants of the Jeep were law enforcement officers.

**43.** After hearing the statement by Rodella Jr. and taking time to collect himself, but while still pinned to the ground by Rodella Jr., Tafoya asked to see Sheriff Rodella's badge. At the time, Sheriff Rodella was pacing behind Tafoya's car on his cell phone.

**44.** Sheriff Rodella then approached Tafoya, pulled his head up by his hair and stated "You wanna see my badge? Here is my badge, mother fucker." At that point, Sheriff Rodella struck Tafoya in the face with the badge and then ground it into his right eye and cheek.

**45.** Some marked police units arrived at the scene a short time later. Tafoya was placed against the hood of his vehicle and searched. He was not advised of his Constitutional rights.

**46.** Tafoya was then placed in the back of a patrol car, and transported to the Rio Arriba County Sheriff's Office.

**47.** Upon arriving at the Sheriff's Office, Tafoya was placed in a holding cell. He was later removed from the holding cell and interviewed by Deputy Andy Gutierrez (Deputy Gutierrez). Tafoya was not advised of his Constitutional rights.

**48.** Tafoya was told to sign a citation to acknowledge receipt and another document he was not permitted to review. Tafoya was then returned to the holding cell.

**49.** Sometime later, Tafoya was transported to the Rio Arriba County Adult Detention Facility in Tierra Amarilla where he was processed. He complained of an injured thumb, but was provided no medical attention. He remained there two days without being taken before a Magistrate Judge.

**50.** On Thursday, March 13, 2014 Tafoya was bonded out by his grandmother for $1,000 (10% of the $10,000 bond).

**51.** According to the State of New Mexico Uniform Traffic Citation, Tafoya was to appear before the Magistrate on or by April 16, 2014. However, the Criminal Complaint

charging Tafoya with evading and assaulting a police officer was filed in Magistrate Court on March 13, 2014. It provided for a hearing before the Magistrate Judge on March 26, 2014. The Statement of Probable Cause supporting the Criminal Complaint was filed March 12, 2014.

**52.** According to Tafoya, at the hearing on March 26, 2014, he was advised of his Constitutional rights. No one from the Rio Arriba Sheriff's Office appeared at the hearing, and the matter was dismissed.

**53.** According to the District Attorney's Office for the 1st Judicial District, the matter was dismissed without prejudice due to it being a felony which would not be adjudicated by Magistrate Court. The matter could be re-filed in District Court.

**54.** Page 26 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section IV, A, 1- All deputies of the Office will, at all times, within jurisdictional limits, prevent crime, preserve the peace, protect life and property, detect and arrest violators of the law, and enforce the laws of the United States, State of New Mexico, and all local ordinances, in accordance with the rules, regulations, policies, procedures, and orders of the jurisdiction and the Office. Deputies will be conscious that when they act under *"color of law,"* that the phrase includes not only laws but also policies, procedures, ordinances, common usage, and custom. [Emphasis in Original]

**55.** Page 27 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section IV, B, 6- CIVIL RIGHTS- All members shall take care to observe and respect the civil rights of citizens, as the term "civil rights" is commonly understood.

**56.** Page 27 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section IV, B, 9- ENFORCEMENT WHILE OFF-DUTY- If a deputy, while off duty, witnesses a violation of the law committed in his presence which, in his professional judgment, demands immediate attention, he may make an arrest, providing:

a. The law violation was committed in Rio Arriba County.
b. The deputy does not use his own personal vehicle to chase or pursue the violator.
c. The deputy displays his/her sheriff identification to the violator and announces his/her purpose.
d. The deputy can make the arrest without jeopardizing his/her own safety, the safety of the violator, or the safety of the public.

**57.** Page 75 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section III, MOTOR VEHICLE PURSUIT, A. PURPOSE, 1. The purpose of this policy is to establish guidelines and responsibilities for Deputies and Supervisors when engaged in motor vehicle pursuits. This policy shall serve as a standard for administrative review of the judgment exercise (SIC) by Deputies and Supervisors involved in a motor vehicle pursuit.

B. POLICY

1. The foremost goal of the Rio Arriba Sheriff's Office is the protection of life and property; therefore, it is the policy of the Sheriff's Office to restrict and regulate those circumstances under which motor vehicle pursuits will be permitted in the performance of the law enforcement mission.

2. Deputies may initiate a high speed pursuit to apprehend a suspect who the Deputy has reasonable grounds to believe poses a clear and immediate threat of death or serious injury to others or who the Deputy had probable cause to believe poses a clear and immediate threat to the safety of others and is ongoing and that existed prior to the high speed pursuit. (reference 29-20-4 NMSA 1978).

3. Deputies shall not initiate or continue a high speed pursuit when the immediate danger to the Deputy and the public created by the high speed pursuit exceeds the immediate danger to the public if the occupants of the motor vehicle being pursued remain at large. (reference 29-20-4 NMSA 1978).

C. DEFINITIONS

1. HIGH SPEED PURSUIT- As used in the Law Enforcement Safe Pursuit Act (29-20-1 NMSA 1978), "high speed pursuit" means an attempt by a Deputy in an authorized emergency vehicle to apprehend an occupant of a motor vehicle, the driver of which is actively attempting to avoid apprehension by exceeding the speed limit.

**58.** Page 78 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section III, D, 8 OPERATIONAL TACTICS:

1. Risk Assessment: Upon initiation of a vehicle pursuit, these risk factors should be taken into consideration:

a. Deputies may initiate a high speed pursuit to apprehend a suspect who the Deputy has reasonable grounds to believe poses a clear and immediate threat of death or serious injury to others or who the Deputy has probable cause to believe poses a clear and immediate threat to the safety of others that is ongoing and that existed prior to the high speed pursuit. Deputies may not participate in a high-speed pursuit if non-sworn persons are present in their vehicle. The Deputy must, however, continue to assess the risk to public safety.

**59.** Page 163 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section IV, E- DOCUMENTING STATEMENTS AND ADMISSION

1. The circumstances surrounding the conduct of interrogations and recording of admissions shall be fully documented. This includes but is not limited to:

a. location, date, time of day and duration of interrogation;
b. the identities of deputies and others present;
c. *Miranda* [italics in original] warnings given, suspect responses and waivers provided, if any; and
d. the nature and duration of breaks in questioning to provide the suspect with food, drink, use of lavatories or for other purposes.

**60.** Page 164 of the Rio Arriba Sheriff's Office Policies and Procedures Manual states:

Section IV, E COMPLYING WITH STATE STATUTES 29-1-16 (ELECTRONIC RECORDINGS OF CUSTODIAL INTERROGATION)

      1. All Deputies and criminal investigation will comply with State Statute 29-1-16, which is "Electronic Recording of Custodial Interrogation". When reasonably able to do so while conducting a custodial interrogation.

        a. The custodial interrogation shall be electronically recorded in its entirety.

        b. If the custodial interrogation is conducted at the office, it shall be electronically recorded by a method that includes audio, visual or both, if available.

        c. The electronic recording shall include the advice of Constitutional rights required by law.

**61.** Sheriff Rodella's actions during the pursuit were consistent with the definition of a high speed pursuit according to Rio Arriba Sheriff's Office Policies and Procedures Manual.

**62.** Your affiant believes the traffic stop initiated by Sheriff Rodella on March 11, 2014 violated the Rio Arriba Sheriff's Office Policies and Procedures Manual and as a result was not a lawful stop. The Sheriff was accompanied by a non-sworn law enforcement officer passenger, specifically, Rodella Jr. This is aggravated by the fact that Rodella Jr. was the driver of the vehicle that pursued Tafoya. The pursuit was also conducted in Sheriff Rodella's private vehicle and not a law enforcement vehicle.

**63.** I reviewed Tafoya's booking photograph which shows a reddish, swollen area under his right eye. This is consistent with Tafoya's statement that Sheriff Rodella hit him in the face with his badge, and then ground the badge in his right eye and against his cheek. In the Statement of Probable Cause supporting the Criminal Complaint against Tafoya there are several inconsistencies:

      1. Rodella Jr. is not identified as the driver in pursuit of Tafoya nor is he identified as assisting in the apprehension of Tafoya.

      2. A statement attributed to a witness regarding having to jump out of the way to avoid being run over is contradicted by my interview of the witness.

      3. According to both the witness and Tafoya, when Tafoya slowed down and rolled his window down he asked the witness to call the police because he was being chased. The Statement of Probable Cause does not include that detail which supports Tafoya not knowing Sheriff Rodella was a law enforcement officer. In fact, when asked if the witness reported Tafoya making any statements as he slowed, the Deputy reported that he did not.

**64.** According to the undated Supplemental Report for Case No. SO-14-000310 that appears to be signed by Sheriff Rodella and appears to be his written statement, Tafoya's vehicle pulled in front of Sheriff Rodella's Jeep Wrangler being driven by his son, Rodella Jr. Rodella

Jr. had to slow down to avoid colliding with Tafoya. Tafoya then sped down the road and almost hit a white vehicle making a left turn off SR 399 (noted as CR 399 in the affidavit). The white vehicle then made a left turn and Rodella stated he then approached Tafoya's vehicle. This is inconsistent with statements Rodella made at the scene to a Deputy regarding a road rage incident whereby Tafoya and the driver of the white vehicle were exchanging words. According to the Deputy, Rodella initially stated the white vehicle and Tafoya were on the shoulder of the road exchanging words. When Rodella approached, both the white vehicle and Tafoya "took off". Tafoya made a u-turn and Rodella gave chase. After I read a section from the Probable Cause Statement supporting the Criminal Complaint, the Deputy stated the Probable Cause Statement was correct and not the initial information provided to me regarding Rodella's statement. The Deputy then stated "At one point Thomas ah Tommy told me they were parked next to each other after they were having road rage." "They" is in reference to the white vehicle and Tafoya. Sheriff Rodella also asserts in the Supplemental that he was concerned for his life as he believed Tafoya had attempted to run him over. It is at that point he asserts he drew his firearm. In Tafoya's statement, Sheriff Rodella's firearm was drawn as Sheriff Rodella exited the Jeep.

**65.** Based on Sheriff Rodella's statements at the scene and a review of his written statement, the justification for the pursuit and details following the pursuit appear to have changed significantly.

**66.** According to Tafoya, there was no road rage incident involving a white vehicle and Tafoya does not recall seeing any white cars on the road before or during the pursuit with Sheriff Rodella. A Deputy at the scene stated that Rodella informed him the initial traffic stop was proceeded by a road rage incident involving a white car. The white car is referenced in Sheriff Rodella's Supplemental Report, Rodella Jr.'s Supplemental Report, Undersheriff Crespin's Supplemental Report (which was based on statements Sheriff Rodella made to him at the scene as he did not witness the event), and the Statement of Probable Cause supporting the Criminal Complaint. The alleged road rage incident does not appear in any of the statements or in the Criminal Complaint.

**67.** In 2005 and 2007 Sheriff Rodella served as a Rio Arriba County Magistrate Judge. He was permanently removed from the position due to the New Mexico State Supreme Court

(NMSSC) finding of willful misconduct in office. In the case, the NMSSC found Sheriff Rodella's testimony lacked credibility. For example in Inquiry Concerning a Judge, Nos. 2006-133, 2007-062, 2007-071, 2007-078. IN RE: Thomas R. RODELLA, Magistrate Court Judge, Rio Arriba County, New Mexico, No. 31,086, the Justices held;

(1.) "Moreover, we agree with the Commission (Judicial Standards Commission) that the evidence demonstrates that Judge Rodella's testimony lacked credibility. This lack of credibility and an apparent unwillingness to admit mistakes, combined with sufficient evidence of willful misconduct, lead us to conclude that Judge Rodella cannot serve as a judge."

(2.) "We agree with the Commission's determination that Judge Rodella's testimony 'in many respects was not credible.' As the Commission stated, '[T]o have accepted [Judge Rodella's] testimony as true, the Commission would have needed to find that all of the other witnesses perjured themselves.'"

(3.) "We emphasize that, in addition to the misconduct described above, Judge Rodella's credibility again was an issue."

(4). "In addition, we are deeply troubled by the Commission's determination, which our independent review of the record supports, the Judge Rodella's testimony lacked credibility. When a new judge, through lack of knowledge, experience or judgment, acts in ways that are inconsistent with his or her new role, we hope that such conduct can be corrected through discipline in the form of training, mentoring, and supervision. However, when a judge denies making mistakes, he or she cannot learn from the mistakes, and there is little that can be done to correct the behavior. Under such circumstances, to allow a judge who is not truthful to remain on the bench betrays the public trust and threatens the integrity and independence of the judiciary as a whole. And, as we wrote In re Griego, we cannot allow a judge who lacks credibility 'to preside over cases in which he is charged with weighing evidence and determining the credibility of others.'"

**68.** My investigation showed there are no recordings of the interview of Tafoya nor is there a recorded or written Advice of Rights/ Miranda warning. Despite the fact Sheriff Rodella asserts Tafoya attempted to hit him with his vehicle, there is no written report of the interview/interrogation of Tafoya. Additionally, the investigation has revealed one of the

Deputies at the Rio Arriba Sheriff's Office stated Tafoya admitted to a road rage incident with the driver of a white car which initiated the pursuit by Rodella. The alleged road rage incident involving the white car, does not appear in any of the statements attributed to Sheriff Rodella or Rodella Jr. nor does it appear in the Probable Cause Statement supporting the Criminal complaint against Tafoya. According to the Rio Arriba Sheriff's Office Policies and Procedures Manual, custodial interviews/interrogations are to be recorded when reasonable, and the recording is to include the giving of a Miranda warning. The policy also states that interviews at the office are to be recorded. According to Tafoya, the first time he was advised of his Constitutional rights was when he appeared before Magistrate Judge Madrid on March 26, 2014.

**69.** The Laboratory Division, DNA Unit, of the FBI was contacted regarding the feasibility of DNA transfer due to skin or blood from Tafoya's eye and cheek to Sheriff Rodella's badge. After details of the victim's account were provided, it was the opinion of the DNA Unit, that it is "very possible" testable DNA could have been transferred through skin or blood and that evidence may still be on the badge in a crevice or on the surface despite the passage of time.

**70.** The investigation has revealed that Sheriff Rodella carries a silver in color revolver. In my experience, law enforcement officers store their service weapons in their residences, locked in their personal vehicles, on their persons, or in their duty vehicles. I believe Sheriff Rodella's silver revolver, is probably in his residence located at 16 Private Drive 1156, Espanola, New Mexico, his Jeep Wrangler registered to Sheriff Rodella and his wife Debbie Rodella with New Mexico License Plate LGR088, VIN Number 1J4GA39128L569817, or a Rio Arriba County Sheriff's Office vehicle, marked or unmarked, parked in his yard or adjacent to his property. I have observed Rio Arriba County Sheriff's Office vehicles parked adjacent to his property. An unmarked law enforcement vehicle would be one without outward law enforcement markings but with items consistent with law enforcement such as subdued emergency lights, radios, or equipment visible through a window consistent with law enforcement.

**71.** The investigation has revealed that Sheriff Rodella wears his badge in at least three configurations- on a necklace lanyard, on his dress uniform, and on a belt clip. It is suspected Sheriff Rodella has more than one badge. In my experience, law enforcement officers store their

badge(s) in their residences, locked in their personal vehicles, on their persons, or in their duty vehicles. I believe Sheriff Rodella's badge(s), are probably in his residence located at 16 Private Drive 1156, Espanola, New Mexico, his Jeep Wrangler registered to Sheriff Rodella and his wife Debbie Rodella with New Mexico License Plate LGR088, VIN Number 1J4GA39128L569817, or a Rio Arriba County Sheriff's Office vehicle, marked or unmarked, parked in his yard or adjacent to his property. I have observed Rio Arriba County Sheriff's Office vehicles parked adjacent to his property. An unmarked law enforcement vehicle would be one without outward law enforcement markings but with items consistent with law enforcement such as subdued emergency lights, radios, or equipment through a window consistent with law enforcement.

**72.** The items sought in attachment B can be carried on a person or in a wallet and your affiant requests that the court allow the search of Sheriff Rodella at any or the locations noted above or elsewhere if he is not at the residence at the time of the search.

## CONCLUSION

**73.** I believe the information contained in this affidavit demonstrates probable cause that Sheriff Rodella engaged in a high-speed pursuit that was out of compliance with departmental policy and unwarranted and that following the pursuit, Sheriff Rodella struck Tafoya in the face with his badge and ground the badge into his cheek and eye which resulted in a violation of 18 USC § 242, Deprivation of rights under color of law.

**74.** I submit there is probable cause to believe the items included in attachment B are located at Sheriff Rodella's residence located at 16 Private Drive 1156, Espanola, New Mexico 87532[3] to include his vehicle, which is a Jeep Wrangler bearing New Mexico license plate number LGR088, VIN number 1J4GA39128L569817, Sheriff Rodella's person, and any Rio Arriba Sheriff's Office vehicles, marked or unmarked, on or adjacent to Sheriff Rodella's residence, for the items listed in Attachment B of this Affidavit which I believe there is probable cause to believe are present at the locations listed and were used to commit a crime and which constitute evidence of violations of federal law, namely, 18 USC § 242, Deprivation of rights under color of law by Rio Arriba County Sheriff Thomas R. Rodella (Sheriff Rodella) and others.

---

[3] A Google map photo of the residential search location is included as Attachment A.

75. Based on the information contained in this affidavit, I request a Search Warrant for the items included in attachment B which I believe are located at Sheriff Rodella's residence located at 16 Private Drive 1156, Espanola, New Mexico 87532[4] to include his vehicle, which is a Jeep Wrangler bearing New Mexico license plate number LGR088, VIN number 1J4GA39128L569817, Sheriff Rodella's person, and any Rio Arriba Sheriff's Office vehicles, marked or unmarked, on or adjacent to Sheriff Rodella's residence, for the items listed in Attachment B of this Affidavit which I believe there is probable cause to believe are present at the locations listed and were used to commit a crime and which constitute evidence of violations of federal law, namely, 18 USC § 242, Deprivation of rights under color of law by Rio Arriba County Sheriff Thomas R. Rodella (Sheriff Rodella) and others.

76. Due to the sensitivity of the investigation and the fact that Sheriff Rodella holds elected office and is currently campaigning for re-election, it is requested this affidavit and warrant remain sealed until such time as it becomes appropriate to reveal such information. The United States further requests the affidavit and warrant be sealed to protect the integrity of the investigation.

I swear that the information is true and correct to the best of my knowledge and belief.

John W. Howard
Special Agent
Federal Bureau of Investigation
Albuquerque, New Mexico

Subscribed and sworn to before me this 29 day of May, 2014.

The Honorable Karen B. Molzen
UNITED STATES MAGISTRATE JUDGE

---

[4] A Google map photo of the residential search location is included as Attachment A.

Attachment A- Search Location:



**SEALED**

Attachment B- Items to be seized:

1. Any and all law enforcement badges.

2. Any and all silver, revolver style handguns.